KELLEY DRYE & WARREN LLP
  David E. Fink (STATE BAR NO. 169212)
  Audrey Jing Faber (STATE BAR NO. 247244)
10100 Santa Monica Boulevard, Twenty-Third Floor
Los Angeles, California 90067-4008
Telephone: (310) 712-6100
Facsimile: (310) 712-6199
dfink@kelleydrye.com
afaber@kelleydrye.com

Attorneys for Barbara Berkowitz, Timothy
Mendelson, and Christopher Wilding, as
Co-Trustees for The Sothern Trust

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BARBARA BERKOWITZ, an individual, TIMOTHY MENDELSON, an individual, and CHRISTOPHER WILDING, an individual, as Co-Trustees for The Sothern Trust,<br><br>        Plaintiffs,<br><br>    v.<br><br>CHRISTIE'S INC., a New York corporation,<br><br>        Defendant. | **CASE NO.**<br><br>**COMPLAINT FOR DAMAGES AND OTHER RELIEF BASED ON CLAIMS FOR:**<br><br>**(1)  DECLARATORY RELIEF**<br><br>**(2)  SPECIFIC PERFORMANCE**<br><br>**(3)  BREACH OF CONTRACT**<br><br>**(4)  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**(5)  BREACH OF FIDUCIARY DUTY**<br><br>**(6)  CONVERSION**<br><br>**(7)  ACCOUNTING**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiffs Barbara Berkowitz, Timothy Mendelson, and Christopher Wilding, as Co-Trustees for The Sothern Trust (collectively, "Plaintiffs" or the "Trust"), for their Complaint against Defendant Christie's Inc. ("Christie's"), allege as follows:

## NATURE OF THE CASE

1.    This action arises out of the wrongful conduct of Christie's auction house in connection with the sale by auction of certain possessions belonging to legendary actress and philanthropist Elizabeth Taylor.  Upon Ms. Taylor's death in 2011, Christie's was entrusted with the task of selling some of Ms. Taylor's most prized and valuable possessions, including the bulk of her famous jewelry collection, items from her iconic fashion wardrobe, and her art collection.  The terms and conditions under which Christie's was to sell Ms. Taylor's possessions were contained in a Consignment Agreement dated July 20, 2011 (the "Consignment Agreement").

2.    The auctions, which were held in New York and London, attracted buyers from around the globe and were very successful.  Proceeds from the exhibition ticket sales from the jewelry sale, along with specialty catalogs boxed with Ms. Taylor's book, *Elizabeth Taylor*: *My Love Affair With Jewelry,* were earmarked and publicized to benefit The Elizabeth Taylor AIDS Foundation. Twenty-seven (27) copies of Ms. Taylor's book, which had been pre-signed by Ms. Taylor, were sold as well.  All proceeds from the sales of the pre-signed books were also to benefit The Elizabeth Taylor AIDS Foundation.

3.    Following the auctions, however, and despite receiving and retaining substantial commissions from sales of Ms. Taylor's property, Christie's failed to abide by its contractual obligations under the Consignment Agreement and blatantly disregarded its fiduciary duties to the Trust.  Among other conduct, Christie's unreasonably, and in violation of its own policies, cancelled the sales of auction items, failed or refused to return unsold and cancelled sale items to the Trust, and failed to remit to the Trust payment for items sold at auction, including an emerald

and diamond ring worth nearly $3 million.  As an agent of the Trust, Christie's had both a contractual and fiduciary duty to act in the utmost good faith and with loyalty in the interest of the Trust, but breached those duties as set forth herein.

4.     The primary dispute between Plaintiffs and Christie's concerns a world-famous Indian diamond known as the "Taj Mahal" diamond (the "Diamond"), which was purchased from Cartier given to Ms. Taylor by her husband, actor Richard Burton.  A sentimental piece, the heart-shaped diamond bears an inscription with the name of the wife of a Mughal emperor.  Christie's sold the Diamond at auction for over $8 million to an anonymous buyer (Christie's knows the identity of the buyer) who, on information and belief, is an important customer of Christie's.  Months after the conclusion of the auction, however, the buyer allegedly demanded that Christie's cancel the sale of the Diamond and return the purchase price.  Upon information and belief, the buyer's demand was based solely on his/her/its contention that the Diamond was not from the Mughal period.

5.     Christie's never warranted or guaranteed the age of the Diamond, however, including its believed Mughal origins.  Instead, Christie's warranted only that the Diamond was an "Indian" diamond, a statement which, upon information and belief, the buyer did not dispute.  Accordingly, the conditions of sale that governed the auction, to which both Christie's and the buyer were contractually bound, did not require Christie's to rescind the sale.

6.     In the past, Christie's has consistently (and successfully), as a matter of policy, taken the legal position that if a buyer's claim falls outside the scope of Christie's warranty, there has been no violation of the conditions of the sale and no obligation by Christie's to rescind.  Moreover, pursuant to the Consignment Agreement, Christie's had an obligation to the Trust not to cancel the sale of any property, including the Diamond, unless it *reasonably* believed that the sale has subjected, or would subject, Christie's or the Trust to liability.  Despite facing no credible threat of legal liability, Christie's nonetheless rescinded the sale of the

Diamond.  In doing so, Christie's not only deviated from its usual business practices and its own established policies, but it violated its obligations to the Trust, all in an effort to appease the buyer.

7.     After Christie's cancelled the sale, it demanded that the Trust return to Christie's all proceeds paid to the Trust for the Diamond.  The Trust has declined to turn over the money to Christie's on the ground that Christie's cancellation of the sale was objectively unreasonable and, therefore, unwarranted under the terms of the Consignment Agreement.  The Trust is informed and believes, and based thereon alleges, that Christie's remains in possession of the Diamond.

8.     In addition to the Diamond, Christie's has failed to account for at least five (5) other items belonging to Ms. Taylor that Christie's allegedly sold at auction, but for which Christie's has not remitted any payments to the Trust.  These items include:

  a.     a necklace and ear clips, by Ciner;

  b.     silver-plated Girandole ear clips;

  c.     a pink layered tulle evening gown with silver beading and sequins throughout;

  d.     a Vicky Tiel navy cotton voile caftan with silvered paillettes; and

  e.     a brown evening bag with purple and pink beading and fringing, by Valentino.

In addition to the foregoing items, Christie's sold at auction in London a Bela Kadar painting, which sold for £7000 in London (lot 325, Sale 850), but the sale was later cancelled without explanation from Christie's and the painting was returned to the Trust.

9.     Finally, Christie's never remitted either to the Trust or to The Elizabeth Taylor AIDS Foundation the proceeds from the sale of the specialty catalogs or the originally signed books, which proceeds were designated for donation to The Elizabeth Taylor AIDS Foundation, which Christie's advertised would be donated to

The Elizabeth Taylor AIDS Foundation, and which Christie's agreed with the Trust would be so donated.  Plaintiffs are informed and believe, and thereon allege, that Christie's cancelled an art sale without explanation, failed and refused to return to the Trust the unsold auction items (with no explanation), and failed to pay the Trust the proceeds from the sale of the Bulgari Ring in an attempt to strong-arm the Trust into returning the proceeds that the Trust rightfully received from the sale of the Diamond.

10.     By this action, the Trust seeks redress for Christie's breaches of its agreement with the Trust and for other bad faith conduct.  In particular, the Trust seeks a declaration of the parties' respective rights and obligations under the Consignment Agreement, including that the Trust is not obligated to return to Christie's the proceeds received from the sale of the Diamond.  In the alternative, if this Court rules that the Trust must return the proceeds from the sale of the Diamond to Christie's, that Christie's must return the Diamond to the Trust.  In addition to the Diamond, the Trust seeks an explanation of the cancelled sales and either the return of the five (5) unaccounted for items, for which the Trust did not receive any sales proceeds, or compensation in full for the full amount of the alleged sales thereof.  In addition, the Trust is entitled to payment for the Bulgari Ring in the amount of $2,900,000, plus interest.  The Trust further seeks to recover all amounts that Christie's has wrongfully retained from the sales of the specialty catalogs and the originally signed books, so that such proceeds can be directed to The Elizabeth Taylor AIDS Foundation.

## **THE PARTIES**

11.     Plaintiffs Barbara Berkowitz, Timothy Mendelson, and Christopher Wilding are Co-Trustees of The Sothern Trust.  The Trust is formed under the laws of the State of California.  Ms. Berkowitz, Mr. Mendelson, and Mr. Wilding were at all times alleged herein acting in their capacity as trustees and are all residents of the

1  State of California.

2      12.    Plaintiffs are informed and believe, and based thereon allege, that

3  Defendant Christie's is a New York Corporation with its principal place of business

4  in New York, New York, which is engaged in, among other things, the business of

5  conducting auctions and private sales of fine art.  Plaintiffs are further informed and

6  believe, and thereon, allege that Christie's regularly conducts business within the

7  State of California and within this District.

8  **JURISDICTION AND VENUE**

9      13.    This is an action for declaratory judgment pursuant to 28 U.S.C. §

10  2201, *et seq*., and Rule 57 of the Federal Rules of Civil Procedure.

11      14.    This Court has diversity jurisdiction over this matter pursuant to 28

12  U.S.C. § 1332(a).  The amount in controversy in this action exceeds $75,000, and is

13  between citizens of different states.

14      15.    This Court further has jurisdiction over the matter pursuant to a forum

15  selection clause contained at paragraph 18 of the Consignment Agreement, which

16  provides, in relevant part:  "In the event of any dispute hereunder strictly between

17  the parties hereto, (i) the parties hereby consent to the exclusive jurisdiction of the

18  courts of the State of California and Federal courts of the United States of America

19  located in the Los Angeles Central District[.]"

20      16.    Venue is proper in this District pursuant to paragraph 18 of the

21  Consignment Agreement.  Venue is also proper in this district under 28 U.S.C. §

22  1391(b) and (d) because a substantial part of the events or omissions giving rise to

23  the claim occurred in this District, and Christie's is subject to personal jurisdiction

24  in this District.

25  / / /

26  / / /

27  / / /

28  / / /

5<br>COMPLAINT

**GENERAL ALLEGATIONS**

**A.      Plaintiffs Entrust Christie's With The Sale Of Elizabeth Taylor's Valuable Jewelry, Wardrobe And Art Collections**

17.     Elizabeth Taylor was one of the greatest film and television actresses of all time.  Over her 60-year career, she amassed nearly 70 acting credits and garnered countless awards for her performances.

18.     A devoted humanitarian, Ms. Taylor was a pioneer in HIV/AIDS-related fundraising and advocacy efforts.  She co-founded amfAR (also known as the American Foundation for AIDS Research), and in 1991, Ms. Taylor established The Elizabeth Taylor AIDS Foundation to raise funds and awareness to fight the spread of HIV/AIDS, and to provide assistance to those living with that devastating disease.

19.     Ms. Taylor had a well-known passion for jewelry, with which she had a self-proclaimed "love affair."  As detailed in her book, *Elizabeth Taylor: My Love Affair With Jewelry*, Ms. Taylor's jewelry collection included both personal keepsakes as well as a number of world-famous and historically significant gems.

20.     Ms. Taylor passed away in Los Angeles, California, on March 23, 2011.  Ms. Taylor made arrangements to sell some of her possessions, including her jewelry collection, upon her death.

21.     In accordance with Ms. Taylor's wishes, on or about July 20, 2011, Plaintiffs, on behalf of the Trust, entered into a Consignment Agreement with Christie's for the sale of Ms. Taylor's vast jewelry collection, clothing and accessory items from her iconic wardrobe, and pieces of artwork.  The various items were to be sold at Christie's New York auction of The Collection of Elizabeth Taylor, which took place in December 2011, and Christie's London auction of Impressionist/Modern Art On Paper, which took place on February 8, 2012 (the "Auctions").  Among the items to be sold at the Auctions were:

/ / /

a.   the Diamond, a heart-shaped, table-cut Indian diamond, commonly known as the "Taj Mahal," which Richard Burton acquired from world-renowned jeweler Cartier for Ms. Taylor's fortieth birthday;

b.   an emerald and diamond ring by BVLGARI (the "Bulgari Ring");

c.   a necklace and ear clips, by Ciner (the "Ciner Necklace Set);

d.   silver-plated Girandole ear clips (the "Girandole Ear Clips");

e.   a pink layered tulle evening gown with silver beading and sequins throughout (the "Tulle Evening Gown");

f.   a Vicky Tiel navy cotton voile caftan with silvered paillettes (the "Vicky Tiel Caftan");

g.   a brown fur evening bag with purple and pink beading and fringing, by Valentino (the "Valentino Bag"); and

**B.   <u>Christie's Rights And Obligations Under The Auctions' Conditions Of Sale And The Consignment Agreement</u>**

22.   All sales that took place at the Auctions were governed by certain Conditions of Sale.  The Conditions of Sale, which contained all the terms on which Christie's and the seller of property contract with the buyer, were set forth in the Auction Catalogue that was distributed to all prospective buyers (the "Catalogue").  By bidding at the Auctions, each buyer agreed to be bound by the Conditions of Sale, whether or not he or she actually read those conditions.

23.   Plaintiffs are informed and believe, and thereon allege, that the Conditions of Sale that applied to the Auctions were the same, or substantially the same, as the conditions of sale that Christie's uses for all of its auctions.

24.   Among other things, the Conditions of Sale govern buyers' payment obligations to Christie's, acting as the Trust's agent, with respect to successful bids and purchases.  Specifically, the Conditions of Sale set forth Christie's expectation that buyers "make payment for purchases immediately after the auction," and

/ / /

expressly require that the buyer "pay the full amount due . . . not later than 4:30 pm on the seventh calendar day following the sale."

25.    Under the Conditions of Sale, if a buyer fails to make payment in full for an item within the allotted seven (7) day time period, Christie's reserves the right to exercise a number of rights and/or remedies, including, without limitation, the right to: hold the defaulting buyer liabile for the total amount due and commence legal proceedings to recover the same; cancel the sale; resell the property publicly or privately; pay the seller (the Trust) an amount up to the net proceeds payable in respect of the amount bid by the defaulting buyer (and thereafter pursue the buyer for such amount); and take any other action as it deemed necessary or appropriate.

26.    The Conditions of Sale also set forth the scope of Christie's guarantee to the buyers in relation to the nature of property sold at the Auction.  Specifically, Paragraph 2 of the Conditions of Sale provides, in pertinent part:

> Neither Christie's nor the seller provides any guarantee in relation to the nature of the property apart from the Limited Warranty in paragraph 6 below. The property is otherwise sold "as is."
>
> . . . .
>
> All statements by us in the catalogue entry for the property or in the condition report, or made orally or in writing elsewhere, are statements of opinion and are not to be relied on as statements of fact.  Such statements do not constitute a representation, warranty, or assumption of liability by us of any kind.
>
> . . . .
>
> Except as stated in the Limited Warranty in paragraph 6 below, all property is sold "as is" without any representation or warranty of any kind by Christie's or the seller.  Buyers are responsible for satisfying themselves concerning the condition of the property and the matters referenced in the catalogue entry.

27.    Paragraph 6 of the Conditions of Sale, entitled "Limited Warranty," further states:

**6.    LIMITED WARRANTY**

> Subject to the terms and conditions of this paragraph, Christie's warrants for a period of five years from the date of the sale that any property described in

headings printed in UPPER CASE TYPE (i.e. headings having all capital-letter type) in this catalogue (as such description may be amended by any saleroom notice or announcement) which is stated without qualification to be the work of a named author or authorship, is authentic and not a forgery.  The term "author" or "authorship" refers to the creator of the property or to the period, culture, source or origin, as the case may be, with which the creation of such property is identified in the UPPER CASE description of the property in this catalogue.  **Only UPPER CASE TYPE headings of lots in this catalogue indicate what is being warranted by Christie's.  Christie's warranty does not apply to the supplemental material which appears below the UPPER CASE TYPE headings of each lot and Christie's is not responsible for error or omissions in such material**. (emphasis added)

28.     Paragraph 5 of the Conditions of Sale, entitled "Extent of Christie's Liability," further emphasizes that Christie's agrees to refund the purchase price of property sold at the Auction only in the circumstances of the Limited Warranty:

**5.     EXTENT OF CHRISTIE'S LIABILITY**

**We agree to refund the purchase price in the circumstances of the Limited Warranty set out in paragraph 6 below**.  Apart from that, neither the seller nor we, nor any of our officers, employees or agents, are responsible for the correctness of any statement of whatever kind concerning any lot, whether written or oral, nor for any other errors or omissions in description or for any faults or defects in any lot.  Except as stated in paragraph 6 below, neither the seller, ourselves, our officers, employees or agents, give any representation warranty or guarantee or assume any liability of any kind in respect of any lot with regard to merchantability, fitness for a particular purpose, description, size, quality, condition, attribution, authenticity, rarity, importance, medium, provenance, exhibition history, literature or historical relevance.  Except as required by local law any warranty of any kind whatsoever is excluded by this paragraph. (emphasis added)

29.     Christie's obligations to the Trust are set forth in the Consignment Agreement, which details the terms and conditions under which Christie's was to sell Ms. Taylor's possessions.

30.     Among other things, the Consignment Agreement dictates Christie's obligations to the Trust in the event of a buyer's non-payment for a sale in violation

of the Conditions of Sale, as described above.  Although Christie's assumes no obligation to enforce payment by the buyer, in the event of such non-payment, Christie's, "in [its] sole discretion, as Seller's agent or on [its] own behalf," reserves the right to cancel the sale and return the property to the Trust, and enforce payment by the buyer.

31.     In addition to the non-payment for an item by a buyer, the Consignment Agreement identifies one other circumstance in which Christie's is authorized to accept the return and rescind the sale of any property sold.  This circumstance is set forth in a provision entitled "Rescission of Sale" (the "Rescission Provision"), which provides, in relevant part:

> **13.     RESCISSION OF SALE**:  Christie's, as Seller's agent, is authorized to accept the return and rescind the sale of any Property at any time if Christie's in our reasonable judgment determines that the offering for sale of any Property has subjected or may subject Christie's and/or Seller to any liability, including liability under warranty of authenticity or title.  In such event, Christie's is further authorized to refund or credit to the buyer the purchase price of such returned Property.  If Christie's has already remitted to Seller any proceeds of the rescinded sale, Seller forthwith shall pay Christie's upon request an amount equal to the remitted proceeds[.]

32.     Finally, the Consignment Agreement specifies how Christie's is to treat unsold property.  Paragraph 15 of the Agreement provides:

> **15.     UNSOLD PROPERTY**:  For each lot offered but not sold, there will be no service charge.  Any Property remaining unsold following the expiration of the thirty-day period referred to in paragraph 14 above shall be returned to Seller at Christie's expense.[1]

---

[1] Paragraph 14 of the Consignment Agreement provides, in relevant part: "If any lot is bought-in pursuant to paragraph 8 above, Christie's, as Seller's exclusive agent, is authorized for a period of thirty days following the auction to sell the lot privately for a price that will result in payment to Seller of an amount at least equal to the amount, after deduction of Christie's commissions and reimbursable expenses, that Seller would have received if the lot had been sold at the reserve, or for such lesser (footnote continued)

**C.**    <u>**Christie's Prepares The Catalogue Descriptions Of Ms. Taylor's**</u>
<u>**Belongings And Offers The Items For Sale At The Auctions**</u>

33.    Plaintiffs are informed and believe, and based thereon allege, that Christie's thoroughly examines all property to be sold at its auctions prior to preparing the Catalogue descriptions and other promotional materials that accompany the sale of that property.  Plaintiffs are informed and believe, and thereon allege, that Christie's thoroughly examined all of Ms. Taylor's belongings prior to offering them for sale at the Auctions, and prepared the accompanying Catalogue descriptions and promotional materials in accordance with its examination and findings.

34.    With regard to the Diamond in particular, Plaintiffs are informed and believe, and thereon allege, that Christie's solicited opinions from its internal experts and consultants, including its Head of Jewelry for the Americas & Switzerland, the Director of its jewelry department in London, and its Director and head of Islamic Art.  Christie's also sought and obtained a description of the Diamond from world-renowned jeweler Cartier, which originally sold the Diamond to Burton.

35.    Based on its research, Christie's prepared materials both for inclusion in the Catalogue, as well as for use in connection with promotional efforts relating to the sale of the jewelry collection and the Diamond.  The Catalogue's upper case heading described the Diamond as:  "AN INDIAN DIAMOND AND JADE PENDANT NECKLACE RUBY AND GOLD CHAIN BY CARTIER."  The upper case lot description did not include, or make any reference to, either the date of the Diamond or of its alleged Mughal origins.

/ / /

_____

amount as Christie's and Seller shall agree."

36.     In addition to the upper case heading, Christie's also prepared supplemental materials regarding the Diamond for inclusion in the Catalogue.

37.     Ultimately, Christie's sold the Diamond to an anonymous buyer (the "Diamond Buyer") for $8,818,500 (including the buyer's commission).  Plaintiffs are informed and believe, and thereon allege, that the Diamond Buyer is an ongoing, valued customer of Christie's.  Christie's remitted payment for the Diamond to Plaintiffs  -- an amount totaling $7.8 Million.

38.     In addition to the Diamond, auction sales included the Bulgari Ring, another high-profile piece in Ms. Taylor's jewelry collection that ultimately sold for $2,900,000, the Ciner Necklace Set, the Girandole Ear Clips, the Tulle Evening Gown, the Vicky Tiel Caftan, and the Valentino Bag.

**D.     Christie's Unreasonably Cancels The Sale Of The Diamond, And Fails To Remit The Sale Proceeds For Other Items Sold**

39.     The Auctions were an undeniable success.  Unfortunately for the Trust, however, that success has been diminished by Christie's unreasonable, bad faith, and self-serving conduct following the sales.

40.     Several months after the sale of the Diamond, Christie's informed the Trust that it had cancelled the sale of the Diamond, and Christie's demanded that the Trust return all proceeds that it received on account of the sale.

41.     The Trust is informed and believes, and based thereon alleges that the Diamond Buyer's demand was based solely on his/her/its contention that the Diamond was not from the Mughal period, despite that Christie's never warranted the age of the Diamond or its alleged Mughal origins.  Notwithstanding that the Diamond Buyer's claim fell outside of the scope of the Limited Warranty, Christie's diverted from its usual policy and practice, and agreed with the Diamond Buyer to cancel the sale of the Diamond without regard to the Conditions of Sale and without any further investigation into the Diamond Buyer's allegations.  Christie's did not apprise the Trust of its actions until after the purported rescission.

42.     Accordingly, Plaintiffs are informed and believe, and thereon allege, that Christie's cancelled the sale of the Diamond to appease an ongoing VIP customer of Christie's, and not because it reasonably believed that the Diamond Buyer's claims would subject it, or the Trust, to any liability.

43.     The Trust has declined to return to Christie's the proceeds it received from the sale of the Diamond because Christie's decision to cancel the sale was unreasonable, and because the Diamond Buyer's alleged demands did not reasonably subject either Christie's or the Trust to liability.  Christie's acted in its own self-interest and to the detriment of the Trust.  Plaintiffs are informed and believe, and thereon allege, that Christie's is still in possession of the Diamond.

44.     In response to the Trust's refusal to return to Christie's the proceeds that it rightfully received and retained from the sale of the Diamond, Christie's has refused to remit to the Trust the proceeds from the sale of the Bulgari Ring, which sold for $2,900,000.  Initially, Christie's told the Trust that the buyer had not completed payment for the Bulgari Ring, and it was unclear to the Trust whether the Bulgari Ring was in the possession of the buyer or still with Christie's. Accordingly, the Trust demanded that Christie's return the Bulgari Ring.  Christie's later confirmed that all payments had been made and the Bulgari Ring had been transferred to the new owner.  Rather than remit payment for the Bulgari Ring to the Trust as required under the Consignment Agreement (and as requested by the Trust), however, Christie's has held hostage the money owed to the Trust for the Bulgari Ring in an effort to gain an unfair advantage in the dispute over the Diamond.

45.     Since the Auctions, the Trust also became aware of other property that was offered for sale at the Auctions, but for which the Trust did not receive any payment.  Specifically, the Trust has not received payment for the Ciner Necklace Set, the Girandole Ear Clips, the Tulle Evening Gown, the Vicky Tiel Caftan, and the Valentino Bag.  Despite repeated requests, Christie's has not provided any explanation as to why it has not compensated the Trust for the remaining items or

returned them. The Trust is informed and believes that the aforementioned items remain in Christie's possession to the Trust.  The sale of the Bela Kadar painting was also unilaterally cancelled without notice or explanation to the Trust.

46.   Finally, compounding the wrongful conduct detailed above, Christie's has not properly remitted payment to the Trust or The Elizabeth Taylor AIDS Foundation for the proceeds specifically earmarked for The Elizabeth Taylor AIDS Foundation.  In particular, Christie's has not remitted to the Trust or The Elizabeth Taylor AIDS Foundation:  (1) proceeds from the sale of twenty-seven (27) copies of *Elizabeth Taylor: My Love Affair With Jewelry*, which bear Ms. Taylor's original signature, which sold for $2500 apiece (the "Books"); and (2) proceeds from the sale of two thousand (2000) copies of a box set of books that includes both a copy of *Elizabeth Taylor: My Love Affair With Jewelry* and a special catalog of Ms. Taylor's jewelry collection, which sold for $600 apiece (the "Box Sets").

## **FIRST CAUSE OF ACTION**

(Declaratory Relief)

47.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 46, as though set forth fully herein.

48.   An actual controversy has arisen and now exists between Plaintiffs, on behalf of the Trust, and Christie's, regarding the scope of the parties' rights and obligations under the Rescission Provision.

49.   Plaintiffs contend that the Rescission Provision does not obligate the Trust to pay Christie's the proceeds it received from Christie's sale of the Diamond because Christie did not exercise "reasonable judgment" in making the decision to rescind the sale of the Diamond on the grounds that the sale would subject Christie's and/or the Trust to liability.

50.   Plaintiffs are informed and believe, and on that basis allege, that Christie's disputes the above-alleged contention.

51.     Plaintiffs seek a declaration of the rights and obligations of the parties under the Rescission Provision of the Consignment Agreement and specifically seeks an adjudication that Plaintiffs, on behalf of the Trust, are not obligated to pay Christie's the proceeds it received from the sale of the Diamond because Christie's decision to rescind the sale was unreasonable.

## SECOND CAUSE OF ACTION

(Specific Performance)

52.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 46, as though set forth fully herein.

53.     In the alternative, if the Court determines that Plaintiffs are obligated to pay Christie's the proceeds it received from the sale of the Diamond on the ground that Christie's decision to rescind the sale reasonable, then Plaintiffs demand specific performance under the Consignment Agreement.

54.     Specifically, pursuant to paragraph 15 of the Consignment Agreement, Plaintiffs demand that Christie's return the Diamond to Plaintiffs at Christie's expense.

55.     Plaintiffs have substantially performed under the Consignment Agreement, and are willing and able to perform any remaining obligations, including returning to Christie's the purchase price of the Diamond in the event that this Court orders it to do so.

56.     Christie's is in possession of the Diamond.  Accordingly, Christie's is able to return the Diamond to Plaintiffs pursuant to paragraph 15 of the Consignment Agreement.

57.     The return of the Diamond, pursuant to paragraph 15 of the Consignment Agreement, is Plaintiffs' only adequate remedy due to the unique nature of the Diamond.

/ / /

/ / /

1

**THIRD CAUSE OF ACTION**

2

(Breach of Contract)

3    58.    Plaintiffs incorporate by reference the allegations contained in

4  Paragraphs 1 through 46, as though set forth fully herein.

5    59.    For good and valuable consideration, the Trust entered into the

6  Consignment Agreement with Christie's, pursuant to which Christie's agreed to

7  remit a specified portion of the proceeds from the sale of Ms. Taylor's jewelry,

8  wardrobe, and art collection, and related items.

9    60.    Plaintiffs have performed all covenants and conditions required of it

10  under the Consignment Agreement.

11    61.    Christie's has breached its contractual duties to Plaintiffs by failing to

12  pay to the Trust or The Elizabeth Taylor AIDS Foundation the proceeds from the

13  sale of the Bulgari Ring, the Ciner Necklace Set, the Girandole Ear Clips, the Tulle

14  Evening Gown, the Vicky Tiel Caftan, the Valentino Bag, and the Books and the

15  Box Sets.

16    62.    As a direct and proximate result of Christie's breaches of the

17  Consignment Agreement as set forth herein, the Trust has suffered general and

18  consequential damages in an amount in excess of the jurisdictional minimum of this

19  Court.

20

**FOURTH CAUSE OF ACTION**

21

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

22    63.    Plaintiffs incorporate by reference the allegations contained in

23  Paragraphs 1 through 46, as though set forth fully herein.

24    64.    For good and valuable consideration, Plaintiffs entered into the

25  Consignment Agreement with Christie's, pursuant to which Christie's agreed to

26  remit a specified portion of the proceeds from the sale of Ms. Taylor's jewelry,

27  wardrobe, and art collection, and related items.

28  / / /

65.     Christie's has deprived the Trust of the right to receive the benefits under the Consignment Agreement, namely, the proceeds from the sale of the Bulgari Ring, the Ciner Necklace Set, the Girandole Ear Clips, the Tulle Evening Gown, the Vicky Tiel Caftan, and the Valentino Bag.  With regard to the Bulgari Ring in particular, Christie's has deprived the Trust of the right to receive the benefits under the Consignment Agreement by initially failing to enforce payment by the buyer of the ring, failing to return the ring upon request and subsequently by withholding payment of $2,900,000 to the Trust.

66.     Plaintiffs are informed and believe, and thereon allege, that Christie's is intentionally withholding payment for the Bulgari Ring, the Ciner Necklace Set, the Girandole Ear Clips, the Tulle Evening Gown, the Vicky Tiel Caftan, and the Valentino Bag and/or is refusing to return the items to the Trust in an attempt to extort from the Trust the proceeds from the sale of the Diamond.

67.     As a direct and proximate result of Christie's breaches of the implied covenant of good faith and fair dealing, as set forth herein, the Trust has suffered general and consequential damages in an amount in excess of the jurisdictional minimum of this Court.

## FIFTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

68.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 46, as though set forth fully herein.

69.     By virtue of Plaintiffs, on behalf of the Trust, having placed confidence in the fidelity and integrity of Christie's by entrusting Christie's with the sale of Ms. Taylor's jewelry, wardrobe, art collection, and related items, for which Christie's received substantial commissions, Christie's, as consignor and agent of the Trust, at all times relevant and referenced herein, had a duty to act with the utmost good faith in the best interests of the Trust.  This fiduciary duty required Christie's, among other things, to provide the Trust with a true and accurate statement of all of the

amounts that Christie's owes the Trust as a result of the sales that took place at the Auctions and the status of any unsold items or cancelled sales, to exercise its discretion to rescind or cancel the sale of consigned property in good faith, and to take all reasonable steps to protect the Trust's rights in the event of the non-payment by a buyer of consigned property, including by enforcing payment by the buyer, by remitting to the Trust the sale price of the consigned property, or by otherwise returning the consigned property to the Trust.

70.    Despite having voluntarily accepted the trust and confidence of Plaintiffs, and in violation of this relationship of trust and confidence, Christie's abused the trust and confidence of Plaintiffs by: (1) failing to report the amounts that Christie's owes the Trust as a result of the sales that took place at the Auctions and the status of any unaccounted for items, including the Ciner Necklace Set, the Girandole Ear Clips, the Tulle Evening Gown, the Vicky Tiel Caftan, and the Valentino Bag, (2) cancelling the sale of the Bela Kadar painting without providing any notice or explanation to the Trust, (3) unreasonably cancelling the sale of the Diamond, in violation of its own policies and the Conditions of Sale, (4) delaying in requiring payment by the buyer of the Bulgari Ring, and (5) intentionally holding hostage payment for the Bulgari Ring and other items for the purpose of extorting from the Trust the proceeds that the Trust rightfully received from the sale of the Diamond.

71.    By committing the foregoing acts, Christie's acted in bad faith, in breach of the duties owed to the Trust, in a manner contrary and directly hostile to the Trust's interests.

72.    As a direct and proximate result of Christie's breaches of its fiduciary duties, as set forth herein, the Trust has suffered general and consequential damages in an amount in excess of the jurisdictional minimum of this Court.

73.    Moreover, Christie's breach of its fiduciary duties described above was intended by Christie's to cause injury to the Trust and constituted despicable

conduct carried on by Christie's in willful and conscious disregard of the Trust's rights such as to constitute malice, oppression or fraud. Plaintiffs therefore are entitled to punitive and exemplary damages against Christie's in an amount sufficient to punish Christie's and deter it and others from engaging in similar, unlawful conduct in the future.

## SIXTH CAUSE OF ACTION

### (Conversion)

74.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 46, as though set forth fully herein.

75.    Under the Consignment Agreement, Christie's was entrusted with selling Ms. Taylor's jewelry, wardrobe, art collection, and related items on behalf of the Trust. The Trust was to receive the proceeds from the sales, subject to an agreed-upon commission that Christie's retained. The Consignment Agreement further provided that, in the event that consigned property is unsold, then Christie's is obligated to return the property to the Trust at Christie's expense.

76.    Christie's has failed to remit to the Trust the proceeds from the sales of the Bulgari Ring, the Ciner Necklace Set, the Girandole Ear Clips, the Tulle Evening Gown, the Vicky Tiel Caftan, and the Valentino Bag, all of which Christie's agreed to offer for sale (and/or did sell) pursuant to the Consignment Agreement. Christie's also has not returned the aforementioned items to the Trust.

77.    As a result, Christie's has wrongfully assumed control over, and converted for its own use, the Bulgari Ring, the Ciner Necklace Set, the Girandole Ear Clips, the Tulle Evening Gown, the Vicky Tiel Caftan, and the Valentino Bag and/or the proceeds from the auction sales of the same.

78.    As a direct and proximate result of Christie's conduct, as set forth above, the Trust has suffered general and consequential damages in an amount in excess of the jurisdictional minimum of this Court.

/ / /

79.     Moreover, Christie's conduct described above was intended by Christie's to cause injury to the Trust and constituted despicable conduct carried on by Christie's in willful and conscious disregard of the Trust's rights such as to constitute malice, oppression or fraud.  Plaintiffs therefore are entitled to punitive and exemplary damages against Christie's in an amount sufficient to punish Christie's and deter it and others from engaging in similar, unlawful conduct in the future.

## SEVENTH CAUSE OF ACTION

### (Accounting)

80.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 46, as though set forth fully herein.

81.     Christie's, in its capacity as auction house, owes a fiduciary duty to its consignors, including Plaintiffs, on behalf of the Trust.

82.     Consistent with its obligations, Christie's has a duty to act in the utmost good faith and in the interest of the Trust, its principal, throughout their relationship, including by providing the Trust with a true and accurate accounting of all of the amounts that Christie's owes the Trust as a result of the sales that took place at the Auctions.

83.     Plaintiffs are informed and believe, and thereon allege, that Christie's has wrongfully withheld proceeds from the sale of the Auctions from the Trust.

84.     Christie's is in the best position to know the true and correct amount owed and due to the Trust from the Auctions because the books and records necessary to make such a determination are in the possession, custody and control of Christie's.

85.     Plaintiffs are entitled to, and hereby demand, an accounting.

/ / /

/ / /

/ / /

**PRAYER FOR RELIEF**

Wherefore, the Trust prays for relief, as follows:

**ON THE FIRST CAUSE OF ACTION**

1.      For a declaration of the rights and obligations of the parties under paragraph 13 of the Consignment Agreement, specifically, that Plaintiffs, on behalf of the Trust, are not obligated to pay Christie's the proceeds it received from the sale of the Diamond.

**ON THE SECOND CAUSE OF ACTION**

2.      In the event that the Court declares that Plaintiffs, on behalf of the Trust, are obligated to pay Christie's the proceeds it received from the sale of the Diamond, for an order that Christie's return the Diamond to the Trust pursuant to paragraph 15 of the Consignment Agreement.

**ON THE THIRD CAUSE OF ACTION**

3.      For the Court to enter judgment against Christie's in a sum in excess of the jurisdictional limit, to be determined according to proof at trial, together with interest thereon at the maximum statutory rate, fees and costs incurred herein, and such other and further relief as the Court may deem just and proper.

**ON THE FOURTH CAUSE OF ACTION**

4.      For the Court to enter judgment against Christie's in a sum in excess of the jurisdictional limit, to be determined according to proof at trial, together with interest thereon at the maximum statutory rate, fees and costs incurred herein, and such other and further relief as the Court may deem just and proper.

5.      For an award of punitive and exemplary damages against Christie's in an amount sufficient to punish Christie's and deter it and others from engaging in similar, unlawful conduct in the future.

**ON THE FIFTH CAUSE OF ACTION**

6.      For the Court to enter judgment against Christie's in a sum in excess of the jurisdictional limit, to be determined according to proof at trial, together with

1  interest thereon at the maximum statutory rate, fees and costs incurred herein, and

2  such other and further relief as the Court may deem just and proper.

3      7.      For an award of punitive and exemplary damages against Christie's in

4  an amount sufficient to punish Christie's and deter it and others from engaging in

5  similar, unlawful conduct in the future.

6                  **ON THE SIXTH CAUSE OF ACTION**

7      8.      For the Court to enter judgment against Christie's in a sum in excess of

8  the jurisdictional limit, to be determined according to proof at trial, together with

9  interest thereon at the maximum statutory rate, fees and costs incurred herein, and

10  such other and further relief as the Court may deem just and proper.

11      9.      For an award of punitive and exemplary damages against Christie's in

12  an amount sufficient to punish Christie's and deter it and others from engaging in

13  similar, unlawful conduct in the future.

14                  **ON THE SEVENTH CAUSE OF ACTION**

15      10.      For an accounting under Court supervision, of the proceeds earned

16  from the Auction and the amounts due and payable to the Trust in accordance with

17  the terms of the Consignment Agreement.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

## ON ALL CAUSES OF ACTION

1.   For attorneys' fees.

2.   For all costs of suit incurred herein.

3.   For any and all further relief which the Court deems proper.

DATED: February 24, 2015          KELLEY DRYE & WARREN LLP
                                  David E. Fink
                                  Audrey Jing Faber


                                  By  s/ David E. Fink
                                        David E. Fink
                                  Attorneys for Barbara Berkowitz, Timothy
                                  Mendelson, and Christopher Wilding, as Co-
                                  Trustees for the Sothern Trust

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs Barbara Berkowitz, Timothy Mendelson, and Christopher Wilding hereby demand a trial by jury on all issues triable by jury.

DATED: February 24, 2015      KELLEY DRYE & WARREN LLP
David E. Fink
Audrey Jing Faber


By  s/ David E. Fink
      David E. Fink
Attorneys for Barbara Berkowitz, Timothy Mendelson, and Christopher Wilding, as Co-Trustees for the Sothern Trust